OPINION
Third Party Intervenor Joseph John Baker appeals a judgment of the Court of Common Pleas of Perry County, Ohio, which denied him relief in this action. Appellant assigns two errors to the trial court:
 ASSIGNMENTS OF ERROR 1. THE COURT ERRED IN REFUSING TO ALLOW APPELLANT JOHN JOSEPH BAKER'S INTERVENTION INTO THE DOMESTIC ACTION OF MELVIN S. BAKER AND LAURA E. BAKER.
 2. THE COURT'S DECISION AND ENTRY ON PROPERTY DIVISION AND FINAL ENTRY DATED AUGUST 18, 1998, IS INVALID, UNENFORCEABLE AND VOID AND MUST BE OVERTURNED.
The facts and circumstances which gave rise to this action, and the procedural posture of this case, is complicated. Appellant is the natural son of appellee Melvin Baker, and the step-son of appellee Laura Baker. Appellant was born December 15, 1976. Appellant sustained personal injuries and recovered a substantial monetary settlement, prior to 1983. After expenses, appellant's settlement was approximately $400,000. The Perry County Probate Court appointed appellee Melvin Baker as guardian of appellant and Melvin Baker posted a guardian's bond in the amount of $4,000. The record is confusing regarding what occurred thereafter, but it is clear appellee Melvin Baker breached his fiduciary duties in regard to appellant. Appellee Melvin Baker purchased a farm with guardianship funds although it is unclear under whose name the farm was originally deeded. Appellant submitted an affidavit from Donald G. Schweller, an attorney who works extensively in probate practice. Schweller's affidavit alleges Melvin Baker purchased the farm with guardianship funds and titled it in appellant's name. Federal agents later arrested appellee Melvin Baker for growing and distributing marijuana, apparently on that farm. Eventually, appellee Melvin Baker was incarcerated, and the federal government attached the farm for forfeiture because of the illegal activity on the farm. The matter was disputed for some time, and eventually the government returned some of the farm land, but not all of it. The affidavit of Tobias Elsass, appellant's counsel, alleges the farm was not returned to the guardianship, because it was not titled in the guardian's name. Instead, Elsass alleges the property had originally been placed in appellees Melvin and Laura Baker's names, and when the government returned the farm, it was placed in their names. The record contains no explanation of the discrepancy between Mr. Elsass' affidavit and Mr. Schweller's affidavit. Nevertheless, the property is currently titled in the names of the appellees. In 1990, appellee Melvin Baker filed a complaint in divorce. Melvin Baker named not only appellee Laura Baker, but also appellant as defendants. The original complaint filed June 22, 1990 alleges a large portion of the assets of Melvin and Laura Baker were purchased from funds properly belonging to appellant and are not marital assets, complaint, paragraph eight. Appellee Laura Baker's answer, filed July 17, 1990, admits the allegations contained in paragraph eight of the complaint, answer, paragraph one. Now both appellees claim they purchased the farm with marital funds. Because of the federal criminal proceedings and the associated forfeiture proceedings, the trial court bifurcated the divorce action, and granted a divorce only on September 23, 1991. The court did not address the other issues in the action because the marital assets were all in limbo. Twice during the long pendency of this action, the court sustained appellant's motions to intervene. The first was filed on August 22, 1991, by Janice Federer, appellant's natural mother and successor guardian. Again, on July 10, 1998, the court sustained appellant's motion to intervene in the divorce action. We infer the first motion to intervene was to establish appellant's new guardian's right to appear, and the second motion to intervene sought to establish appellant's right, after reaching his majority, to intervene on his own behalf. However, it is clear the original complaint in 1990 established appellant's presence and claims in this action. In January 1998, the court began to study the issues surrounding the division of property, apparently because the forfeiture action had finally been resolved. After a flurry of pleadings, the trial court, on August 18, 1998, entered a final judgment regarding the property division. At this point, the proceedings had been pending for eight years, and the record reflects the judge assigned to the case was, at least, the third judge to preside over it. In the entry on property division, the court noted the length of time that had passed since the divorce was granted, while the property division remained pending. The court had directed the parties to prepare documentation regarding the value of the marital assets and debts. The result was a wide difference in the valuation and description of the various assets. Both appellee Melvin Baker and appellee Laura Baker accused the other of wasting the marital assets. In addition, because of the legal financial problems which beset the family, appellee Laura Baker was forced to dispose of various items, arguably for less than full value, just to pay bills and keep the family afloat. Another problem was that a major asset of the marriage was a horse farm. After the eight years this matter was pending, it was nearly impossible to arrive at the current market value of the property and horses, particularly because appellee Laura Baker had to expend a continuous outlay of funds in order to preserve the assets as far as she could. The trial court found Melvin Baker had wasted the assets of the marriage because of his criminal convictions, and the resulting forfeitures and foreclosures. Appellee Laura Baker also claimed back child support. The trial court found it was impossible to calculate values of any of the property using ordinary criteria. The court also noted it could not make a decision except in reliance on probative evidence presented to it. The court found there was not enough reliable evidence on which to base a decision except upon "the broadest terms". The court found equity demanded the court leave the parties as it found them. The court admitted this resulted in appellee Laura Baker receiving most of the marital assets, but the court noted she was also saddled with most of the debt and the responsibility for maintaining the family during appellee Melvin Baker's incarceration. The court also noted if appellee Laura Baker was receiving more than an equal split, this would be substantially offset by the amount of child support that was unpaid for years. The court concluded each party should be awarded the properties and assets in their possession. Having made this decision, the trial court entered a final judgment on the intervenor's motion. The court found in light of its decision in the divorce action, it had no jurisdiction to grant appellant's request for relief. The court conceded it had the authority to preserve the status quo as to a contested asset, but found it had no jurisdiction to convert a divorce action into an action for accounting by a trustee. The court noted appellant had a colorable claim to reimbursement, and the court did not attempt to decide the merits of that claim.
 I
In his first assignment of error, appellant asserts the court erred in refusing to allow his intervention into the divorce action between the appellees. Our review of the record demonstrates appellant was named in the original complaint, and two motions to intervene were actually sustained. The trial court's final entry on appellant's claim does not find appellant was not a proper party to this action, but rather, denies his prayer for relief. Appellant urges the court's property division impairs and impedes his ability to protect his property rights. However, it appears from the record appellant has filed an action for foreclosure, or in the alternative, to quiet title in this property. The record contains a copy of a complaint in foreclosure and quiet title appellant has brought in an effort to secure this property. Appellant's brief alleges the foreclosure action was pending at the time this appeal was briefed, and the record contains no further information regarding it. The record also indicates appellant received a judgment from the Perry County Probate Court to recover against the dismally inadequate bond appellee Melvin Baker had posted. Appellant now has a certificate of judgment on file with the common pleas court and the Perry County Recorder, with an unpaid judgment of approximately $300,000. Thus, appellant is pursuing various remedies, and the judgment appealed from does not destroy his claims against appellees. The first assignment of error is overruled.
 II
In his second assignment of error, appellant urges the court's decision is invalid, unenforceable, and void, because in the judgment entry dividing the property, the court did not identify specific items of marital property and the party to whom the property is allocated. R.C. 3105.171 requires the court to demonstrate its distributive award of marital property is equitable. Appellant argues the court's judgment entry on the property division does not comport with the Revised Code requirements. The circumstances surrounding this case clearly demonstrate how inadvisable it is to bifurcate a divorce action, and postpone a division of property. However, in this case, given the morass of legal proceeding and entanglements in which this marriage was enmeshed, it is difficult for this court to suggest a practical alternative at this late date. The trial court's judgment entry reflects its appreciation of the issues and its acknowledgment that it was not using ordinary methods to formulate its distribution. Sometimes an unusual problem makes a usual solution impossible. The Ohio Supreme Court has generally applied the abuse of discretion standard to judgments entered in domestic relations cases, see Booth v. Booth (1989), 44 Ohio St.3d 142,144. The Ohio Supreme Court specifically made the abuse of discretion standard applicable to divisions of marital property in Martin v. Martin (1985), 18 Ohio St.3d 292. The Supreme Court has frequently defined the term abuse of discretion as implying ". . . the court's attitude is unreasonable, arbitrary or unconscionable. . . ." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217 at 219. The rationale for applying the abuse of discretion is to give a trial court the ability to do what is equitable upon the unique facts and circumstances of each case, Cherry v. Cherry (1981), 66 Ohio St.2d 348 at 355. We have reviewed the court's decision, and the extensive record herein, and although we find the court's decision is unusual, we nevertheless find it does not constitute an abuse of discretion. We specifically find the court's explanation of its reasons for its distribution of assets complies with the Revised Code Section3105.171, because it supports the court's determination property has been equitably divided. The second assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, of Perry County, Ohio, is affirmed.
By Gwin, P.J., Hoffman, J., and Edwards, J., concur